UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ALISHA ROSINEK, on Behalf of Herself and All Other Similarly Situated Shareholders of Psychiatric Solutions, Inc.,<br><br>    Plaintiff,<br><br>v.<br><br>PSYCHIATRIC SOLUTIONS, INC., UNIVERSAL HEALTH SERVICES, INC., OLYMPUS ACQUISITION CORP., JOEY A. JACOBS, MARK P. CLEIN, DAVID M. DILL, RICHARD D. GORE, CHRISTOPHER GRANT, JR., WILLIAM M. PETRIE, EDWARD K. WISSING, RONALD M. FINCHER, CHRISTOPHER L. HOWARD, JACK E. POLSON, and BRENT TURNER,<br><br>    Defendants. | Case No. 3:10-cv-00534<br>Senior Judge Nixon<br>Magistrate Judge Bryant |

## MEMORANDUM OF LAW OF UNIVERSAL HEALTH SERVICES, INC. AND OLYMPUS ACQUISITION CORP. IN SUPPORT OF THEIR MOTION TO DISMISS THE INDIVIDUAL AND SECOND AMENDED CLASS ACTION COMPLAINT

*Of Counsel:*

Max R. Shulman
Gary A. Bornstein
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
(212) 474-1000

John S. Hicks
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
(615) 726-7337

*Attorneys for Defendants Universal Health Services, Inc. and Olympus Acquisition Corp.*

## TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................................ ii

Preliminary Statement ............................................................................................................. 1

Statement of Facts .................................................................................................................. 2

        A.      UHS Enters the Bidding Process to Acquire PSI .................................................. 2

        B.      UHS and the Special Committee Negotiate at Arm's Length ............................... 3

        C.      Procedural History .................................................................................................. 3

Argument .................................................................................................................................. 4

I.      Legal Standard ................................................................................................................. 4

II.     Plaintiff Fails to State a Claim For Aiding and Abetting Breach of Fiduciary Duty .......... 5

        A.      Applicable Law ....................................................................................................... 5

        B.      The Complaint Fails to Allege Knowing Participation by UHS ............................. 7

        C.      The Allegations of Arm's-Length Bargaining Between UHS and the Special Committee Preclude a Claim of Knowing Participation ..................................... 9

        D.      The Allegations Regarding the Timing of UHS's Involvement Preclude a Claim of Knowing Participation .......................................................................... 10

Conclusion ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) ......................................................................... 4, 5, 7

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ............................................................ 4, 5

Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994) ........................................................................................................................... 6

Glidden Co. v. Jandernoa, 5 F. Supp. 2d 541 (W.D. Mich. 1998) ............................................. 5

Hensley Mfg. v. ProPride, Inc., 579 F.3d 603 (6th Cir. 2009) ................................................ 4, 5

In re Del-Met Corp., 322 B.R. 781 (Bankr. M.D. Tenn. 2005) ................................................... 5

In re Frederick's of Hollywood, Inc. S'holders Litig., No. 15944, 1998 WL 398244 (Del. Ch. July 9, 1998) ........................................................................................................... 9

In re Gen. Motors (Hughes) S'holder Litig., Civ. A. No. 20269, 2005 WL 1089021 (Del. Ch. May 4, 2005) ................................................................................................. 7, 8, 10

In re Hechinger Inv. Co. of Del., 278 Fed. Appx. 125 (3d Cir. 2008) ........................................ 9

In re Shoe-Town, Inc. Stockholders Litig., Civ. A. No. 9483, 1990 WL 13475 (Del. Ch. Feb. 12, 1990) .............................................................................................................. 9

In re Telecommc'ns, Inc. S'holders Litig., Civ. A. No. 16470, 2003 WL 21543427 (Del. Ch. July 7, 2003) ........................................................................................................ 6, 8

Jackson Nat'l Life Ins. Co. v. Kennedy, 741 A.2d 377 (Del. Ch. 1999) ...................................... 7

Journal Commc'ns, Inc. v. Sabo, No. 3:07-605, 2008 WL 821524 (M.D. Tenn. Mar. 26, 2008) ......................................................................................................................... 5, 6

Lawyers Title Ins. Corp. v. United Am. Bank of Memphis, 21 F. Supp. 2d 785 (W.D. Tenn. 1998) .................................................................................................................. 6

Malpiede v. Townson, 780 A.2d 1075 (Del. 2001) .......................................................... 5, 6, 8, 9

McGowan v. Ferro, Civ. A. No. 18672, 2002 WL 77712 (Del. Ch. Jan. 11, 2002) ............... 6, 7, 8

Morgan v. Cash, Civ. A. No. 5053, 2010 WL 2803746 (Del. Ch. July 16, 2010) .................. 5, 6, 9

Se. Tex. Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666 (6th Cir. 2006) .............................. 5

N JSH 786100 v1
1039057-000005 08/06/2010

**Statutes & Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................4, 7

## Preliminary Statement

This lawsuit follows the agreement by Universal Health Services, Inc. ("UHS") to acquire Psychiatric Solutions, Inc. ("PSI") for approximately $3.1 billion.[1] In her Individual and Second Amended Class Action Complaint (the "Complaint"), plaintiff asserts a series of claims against PSI and certain of its officers and directors as well as a single aiding and abetting claim against UHS. Absent from the Complaint, however, is any factual assertion that UHS participated in any of the wrongdoing alleged therein.

Specifically, plaintiff challenges PSI's issuance of allegedly improper stock options and equity awards to certain of its executives. The awards, however, were made before UHS became involved in the bidding to acquire PSI, and there is no allegation that UHS played any part in PSI's decision to make the awards.

Plaintiff also claims that PSI's board of directors sold the company through an improper sales process that allegedly failed to secure the highest available price for PSI's shareholders. The only role UHS is alleged to have played in that process, however, is to have negotiated the Merger with the Special Committee of the PSI board at arm's length. There is no allegation that UHS was involved in any way in any of the PSI board's decisions, that UHS had any reason to believe that the board was acting in a manner inconsistent with its fiduciary duties or that UHS made the slightest attempt to exploit any alleged conflict of interest on the board.

Finally, plaintiff claims that PSI made misstatements and omissions in two proxy statements that it issued to solicit votes by its shareholders. The allegedly improper disclosures,

---

[1] On May 16, 2010, UHS and its subsidiary, Olympus Acquisition Corp. ("Olympus"), entered into an Agreement and Plan of Merger with PSI (the "Merger Agreement") whereby UHS agreed to purchase all outstanding PSI stock for $33.75 per share in cash (the "Merger"). UHS and Olympus are referred to collectively herein as "UHS".

however, were made by PSI to its own shareholders, and the Complaint makes no allegation that UHS had any involvement at all in the issuance of the PSI proxy statements.

In sum, there is not a single factual allegation in the Complaint to suggest that UHS did something wrong. Plaintiff's allegations against UHS amount to nothing more than conclusory assertions that UHS aided and abetted unspecified "wrongdoing" on the part of PSI's board. That is insufficient as a matter of law either to plead the elements of an aiding and abetting cause of action or to state a "plausible" claim for relief as required to survive a motion to dismiss.

Accordingly, the Court should dismiss the Complaint as against UHS with prejudice.

## Statement of Facts

### A. UHS Enters the Bidding Process to Acquire PSI

On March 10, 2010, the Wall Street Journal reported that PSI was in talks with Bain Capital ("Bain") about a possible acquisition of PSI. (Second Am. Compl. ("SAC") ¶ 55.) That same day, PSI confirmed in a press release that it had been approached by third parties interested in acquiring PSI and announced that it had established a Special Committee to explore the company's potential responses. (SAC ¶¶ 55, 78.)

Following that announcement, UHS approached Goldman, Sachs & Co., the financial advisor retained by the PSI Special Committee, to express UHS's interest in acquiring the company. (SAC ¶¶ 78, 79.) The Special Committee executed a confidentiality agreement with UHS and requested that UHS and other interested parties submit bids by April 30, 2010. (SAC ¶ 79.)

### B. UHS and the Special Committee Negotiate at Arm's Length

As requested, on April 30 UHS submitted a proposal indicating its interest in acquiring PSI for between $32 and $34 per share. (SAC ¶ 79.) Several other interested parties also submitted bids on that date, and Bain stated that it would be willing to improve on its initial bid of $27.75 per share. (SAC ¶ 79.)

Following those opening proposals, the Special Committee considered several rounds of offers from UHS and its rival bidder, Bain. On May 14, UHS submitted a proposal to acquire PSI for $32.50 per share and Bain submitted a bid of $30.50. (SAC ¶ 84.) The Special Committee entertained a revised proposal from Bain the following day, however, and initially concluded that Bain's proposal was superior. (SAC ¶ 84.) After a "volley of negotiations", UHS sought to submit a higher bid to the Special Committee. (SAC ¶ 84.) On May 16, 2010, UHS submitted its highest offer of $33.75, which was higher than the competing Bain proposal and which the Special Committee and PSI's board accepted. (SAC ¶¶ 84-85.)

The following day, UHS and PSI announced that they had executed a merger agreement whereby UHS would acquire PSI for $33.75 per share in cash. (SAC ¶ 85.)

### C. Procedural History

On May 28, 2010, within two weeks of execution of the Merger Agreement, plaintiff filed this lawsuit. Plaintiff subsequently amended her complaint twice, first on June 14, 2010, and again on July 20, 2010.

The Second Amended Complaint asserts several claims against PSI and certain of its officers and directors (collectively, the "PSI Defendants"). First, plaintiff challenges PSI's issuance of, and disclosures related to, allegedly improper stock option and equity awards granted to certain PSI executives in February 2010. (See SAC ¶¶ 57-75, 119-21.) Second, plaintiff alleges that the PSI Defendants breached their fiduciary duties by "[c]onducting a

3

N JSH 786100 v1
1039057-000005 08/06/2010
Case 3:10-cv-00534 Document 76 Filed 08/06/10 Page 7 of 17 PageID #: 749

tainted and improper sales process" that allegedly failed to maximize value for PSI's shareholders. (SAC ¶ 116(c); see also id. ¶¶ 76-87.) Third, plaintiff alleges that the preliminary proxy that PSI filed in connection with the shareholder vote on the Merger contained misstatements and omissions. (See SAC ¶¶ 93-113.)

Plaintiff's sole claim against UHS is for aiding and abetting alleged wrongdoing by the PSI board. (See SAC ¶¶ 122-25.) Plaintiff alleges no facts, however, suggesting that UHS participated in any way in the decisions of the PSI Defendants. Nor does plaintiff allege any facts that would establish that UHS knew that the PSI Defendants were allegedly acting improperly. Instead, plaintiff makes only the general and conclusory averments that UHS "knowingly aided and abetted the Director Defendants' wrongdoing alleged herein", that UHS "provided substantial assistance" to the PSI Defendants' alleged breaches of fiduciary duty and that UHS was an "active and necessary participant[] in the Individual Defendants' agreement to complete the Proposed Merger on terms that are unfair to PSI's shareholders". (SAC ¶¶ 123-24.) Plaintiff also alleges that UHS "insist[ed] on various provisions in the Merger Agreement" in an attempt to "lock up" the transaction, but does not specify what those supposed "lock up" provisions were or how they allegedly effected a "lock up". (SAC ¶ 123.)

<u>Argument</u>

## I. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'". <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>see also</u> <u>Hensley Mfg. v. ProPride, Inc.</u>, 579 F.3d 603, 609 (6th Cir. 2009). Although the court generally must accept factual allegations as true, allegations that "are no more than conclusions, are not entitled to the assumption of truth", and

4

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 129 S.Ct. at 1949-50. Furthermore, the court "need not accept as true a legal conclusion couched as a factual allegation", Hensley Mfg., 579 F.3d at 609 (internal quotation marks omitted), and a complaint that fails "to raise a right to relief above the speculative level" should be dismissed as a matter of law, Twombly, 550 U.S. at 555.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

To state a claim that an acquirer aided and abetted a target board's breach of fiduciary duty, a plaintiff must allege facts from which the Court can infer that the bidder "attempt[ed] to create or exploit conflicts of interest in the board" or that "the bidder and the board conspire[d] in or agree[d] to the fiduciary breach". Malpiede v. Townson, 780 A.2d 1075, 1097-98 (Del. 2001); see Morgan v. Cash, Civ. A. No. 5053, 2010 WL 2803746, at *4 (Del. Ch. July 16, 2010). Plaintiff alleges no such facts here and for that reason the Complaint (as against UHS) should be dismissed.

### A. Applicable Law

A claim for aiding and abetting breach of fiduciary duty under Delaware law consists of four elements: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach".[2] Malpiede, 780 A.2d at 1096; accord Journal Commc'ns,

---

[2] Because PSI is incorporated in Delaware, Delaware law applies to plaintiff's aiding and abetting claim. See, e.g., Se. Tex. Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 672 & n.10 (6th Cir. 2006); Glidden Co. v. Jandernoa, 5 F. Supp. 2d 541, 555 (W.D. Mich. 1998) (holding that Delaware law governs an aiding and abetting claim where Delaware law governs the fiduciary duties owed by the corporation's directors to its shareholders). The only other state whose law might apply is Tennessee--but Tennessee law relating to aiding and abetting breach of fiduciary duty is substantially the same as Delaware's and hence, under either state's law, the result would be no different. See In re Del-Met Corp., 322 B.R. 781, 815-17 (Bankr. M.D. Tenn.

Inc. v. Sabo, No. 3:07-605, 2008 WL 821524, at *7 (M.D. Tenn. Mar. 26, 2008) (setting forth the same elements under Tennessee law). Of particular importance to this motion is the requirement that the alleged aider and abettor knowingly participated in the fiduciary's breach, which "requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach". Malpiede, 780 A.2d at 1097; accord Lawyers Title Ins. Corp. v. United Am. Bank of Memphis, 21 F. Supp. 2d 785, 797 (W.D. Tenn. 1998) ("actual knowledge of the third party's wrongful conduct is required to establish aider and abettor liability"). The requirement that the third party "knowingly participate in the alleged breach . . . protects acquirors, and by extension their investors, from the high cost of discovery where there is no reasonable factual basis supporting an inference that the acquiror was involved in any nefarious activity". Morgan, 2010 WL 2803746, at *8 (emphasis in original).

Thus, to survive a motion to dismiss, a complaint must either allege facts directly establishing the third party's knowing participation in the fiduciary duty breach or contain "factual allegations from which knowing participation can be inferred". McGowan v. Ferro, Civ. A. No. 18672, 2002 WL 77712, at *2 (Del. Ch. Jan. 11, 2002) (internal quotation marks omitted); see also In re Telecommc'ns, Inc. S'holders Litig., Civ. A. No. 16470, 2003 WL 21543427, at *2 (Del. Ch. July 7, 2003) ("TCI") ("[I]t is necessary that the plaintiffs make factual allegations from which knowing participation may be inferred in order to survive a motion to dismiss."); accord Sabo, 2008 WL 821524, at *7-8 (dismissing an aiding and abetting

---

2005). Moreover, although plaintiff also alleges federal securities law violations by the PSI Defendants, she does not allege that UHS aided and abetted those violations. That is because aiding and abetting liability is unavailable under the federal securities laws where, as in this case, secondary liability is not expressly created by statute. See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 176-77 (1994).

6

claim where the complaint did not allege that the defendant "'substantially assisted,' or even 'encouraged,' [the fiduciary] to breach any duty owed to Plaintiff").

Where there are no direct factual allegations of knowing participation, "a court can infer a non-fiduciary's knowing participation 'only if a fiduciary breaches its duty in an inherently wrongful manner, and the plaintiff alleges <u>specific facts</u> from which that court could reasonably infer knowledge of the breach'". <u>McGowan</u>, 2002 WL 77712, at *2 (emphasis in original) (quoting <u>Jackson Nat'l Life Ins. Co. v. Kennedy</u>, 741 A.2d 377, 392 (Del. Ch. 1999)). However, "[c]onclusory statements that are devoid of factual details to support an allegation of knowing participation will fall short of the pleading requirement needed to survive a Rule 12(b)(6) motion to dismiss". <u>McGowan</u>, 2002 WL 77712, at *2 (internal quotation marks omitted).

### B. The Complaint Fails to Allege Knowing Participation by UHS

Plaintiff's aiding and abetting claim fails to meet the above legal standard because the Complaint alleges no facts from which to conclude that UHS knowingly participated in any alleged breach of fiduciary duty by the PSI Defendants. The Complaint contains only the conclusory averments that UHS aided and abetted unspecified "wrongdoing alleged herein" and that UHS "provided substantial assistance to such breaches of fiduciary duty". (SAC ¶¶ 123-24.) Those are conclusions, not facts, and thus are insufficient to state a claim for aiding and abetting. <u>See</u> <u>In re Gen. Motors (Hughes) S'holder Litig.</u>, Civ. A. No. 20269, 2005 WL 1089021, at *24 (Del. Ch. May 4, 2005) ("Conclusory statements of knowing participation will not suffice."); <u>accord</u> <u>Iqbal</u>, 129 S.Ct. at 1950 ("pleadings that . . . are no more than conclusions, are not entitled to the assumption of truth").

Plaintiff's allegation that UHS was an "active and necessary participant[] in the Individual Defendants' agreement to complete the Proposed Merger on terms that are unfair to

7

N JSH 786100 v1
1039057-000005 08/06/2010
Case 3:10-cv-00534 Document 76 Filed 08/06/10 Page 11 of 17 PageID #: 753

PSI's shareholders" is likewise insufficient. (SAC ¶ 123.) As a party to the Merger Agreement, it goes without saying that UHS was an "active and necessary participant" in the agreement to complete the Merger. "But that alone does not imply knowing participation on [UHS's] part in a breach of fiduciary duty by [PSI's] directors." In re Gen. Motors, 2005 WL 1089021, at *27. On the contrary, Delaware courts routinely dismiss aiding and abetting claims against acquirers where, as in this case, there is "no indication in the . . . complaint that [the acquirer] participated in the board's decisions, conspired with the board, or otherwise caused the board to make the decisions at issue". Malpiede, 780 A.2d at 1098; see also In re Gen. Motors, 2005 WL 1089021, at *27 (dismissing the complaint where there were "no properly pled allegations that" the defendants "participated in meetings of the [counterparty's] board of directors or otherwise injected themselves into the process by which the . . . directors approved" the transaction); McGowan, 2002 WL 77712, at *4 (granting a motion to dismiss where "the Complaint does not allege that [the acquirer] conspired with the director-defendants to breach their fiduciary duty").

Finally, plaintiff's allegation that UHS tried to "lock up" the Merger by "insisting on various provisions in the Merger Agreement" does not state a claim. (SAC ¶ 123.) To allege aiding and abetting based upon the terms of a merger agreement, the terms must be "so egregious . . . as to be inherently wrongful". TCI, 2003 WL 21543427, at *2. Plaintiff's allegations fall far short of that standard. The Complaint is devoid of a single factual allegation identifying with particularity what the alleged "lock up" provisions in the Merger Agreement were or how they allegedly had the effect of "lock[ing] up" the deal for UHS. Plaintiff's conclusory assertion that UHS aided and abetted a breach of fiduciary duty by insisting upon unspecified "various provisions" is insufficient as a matter of law.

8

### C. The Allegations of Arm's-Length Bargaining Between UHS and the Special Committee Preclude a Claim of Knowing Participation

Moreover, the Complaint's factual allegations themselves defeat a claim of knowing participation because they demonstrate that the Merger was the product of arm's-length negotiations between UHS and the Special Committee. According to the Complaint, UHS approached the Special Committee's financial advisor to express its interest in acquiring PSI. (SAC ¶¶ 78-79.) The Special Committee considered UHS's proposals along with those of other potential acquirers. (SAC ¶¶ 79-80, 84.) Just one day before the Merger Agreement was signed, the Special Committee favored an offer from a rival bidder. (SAC ¶ 84.) The parties engaged in a "volley of negotiations", however, and ultimately UHS and the Special Committee agreed upon a price--which was higher than the competing bid. (SAC ¶¶ 84-85.)

Those allegations describe "classic arms-length bargaining, not knowing participation in the breach of a fiduciary duty". In re Shoe-Town, Inc. Stockholders Litig., Civ. A. No. 9483, 1990 WL 13475, at *8 (Del. Ch. Feb. 12, 1990) (granting a motion to dismiss where complaint alleged that the bidder "made a tentative offer", conducted due diligence, "made a bid and then agreed to a price"). Under Delaware law, where a "merger transaction [is the product of] an arm's length deal, aiding and abetting liability [is] precluded as a matter of law" because a party "merely negotiating a deal at arm's length . . . by definition is not knowingly participating in anything but a normal business transaction". In re Hechinger Inv. Co. of Del., 278 Fed. Appx. 125, 130 (3d Cir. 2008); see, e.g., Malpiede, 780 A.2d at 1098 ("arm's length negotiations are inconsistent with participation in a fiduciary breach"); Morgan, 2010 WL 2803746, at *8 (citing the "long-standing rule that arm's length bargaining is privileged and does not, absent actual collusion and facilitation of fiduciary wrongdoing, constitute aiding and abetting"); In re Frederick's of Hollywood, Inc. S'holders Litig., No. 15944, 1998 WL 398244,

9

at *3 n.8 (Del. Ch. July 9, 1998) ("This Court has consistently held that evidence of arm's-length negotiation with fiduciaries negates a claim of aiding and abetting, because such evidence precludes a showing that the defendants knowingly participated in the breach by the fiduciaries").

Because the Complaint alleges nothing more than arm's-length negotiations, plaintiff's aiding and abetting claim fails. See In re Gen. Motors, 2005 WL 1089021, at *27 (granting a motion to dismiss where the complaint "indicate[d] that . . . negotiations occurred at arms-length").

### D. The Allegations Regarding the Timing of UHS's Involvement Preclude a Claim of Knowing Participation

Plaintiff's allegations also defeat an aiding and abetting claim because they demonstrate that UHS did not become involved in discussions to acquire PSI until after the alleged breaches of fiduciary duty occurred--and hence could not possibly have knowingly participated in them. According to the Complaint, UHS first approached PSI's financial advisor in March 2010 (SAC ¶¶ 78-79); however, the allegedly improper equity awards were issued the previous month (id. ¶¶ 59-60). As discussed above, there is not even the slightest factual allegation that UHS had any involvement whatsoever in PSI's issuance of the awards. Furthermore, by the time of UHS's involvement, PSI already had been in discussions with other potential acquirers regarding a possible sale of the company (see SAC ¶¶ 51-52, 76-79), and up until the day before the Merger Agreement was signed the Special Committee favored a proposal from another bidder (id. ¶ 84). Those facts defeat any suggestion that UHS could have conspired or colluded with the PSI Defendants in any alleged breach of fiduciary duty.

10

N JSH 786100 v1
1039057-000005 08/06/2010
Case 3:10-cv-00534   Document 76   Filed 08/06/10   Page 14 of 17 PageID #: 756

**Conclusion**

For the foregoing reasons, the Court should dismiss the Complaint as against UHS with prejudice.

Date: August 6, 2010

                                    Respectfully submitted,

                                    BAKER, DONELSON, BEARMAN,
                                    CALDWELL & BERKOWITZ, P.C.

                                  By  /s/ John S. Hicks
                                        John S. Hicks, B.P.R. No. 010478

                                    Baker Donelson Center
                                        211 Commerce Street, Suite 800
                                          Nashville, TN 37201
                                            (615) 726-7337

                                  *Attorneys for Defendants Universal Health Services, Inc. and Olympus Acquisition Corp.*

OF COUNSEL:

Max R. Shulman
Gary A. Bornstein
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

## CERTIFICATE OF SERVICE

I certify that on August 6, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

J. Gerard Stranch, IV
Branstetter, Stranch & Jennings, PLLC
227 Second Avenue North, 4th Floor
Nashville, Tennessee 37201-1631
gstranch@branstetterlaw.com
Attorneys for Plaintiff

Nadeem Faruqi
Emily C. Komlossy
Faruqi & Faruqi, LLP
369 Lexington Avenue, 10th Floor
New York, New York 10017
nfaruqi@faruqilaw.com
ekomlossy@faruqilaw.com
Attorneys for Plaintiff

Mark C. Gardy
James S. Notis
Kira German
560 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
mgardy@gardylaw.com
jnotis@gardylaw.com
Attorneys for Plaintiff

Alan S. Goudiss
H. Miriam Farber Gorman
Shearman & Sterling
599 Lexington Avenue
New York, New York 10022
agoudiss@shearman.com
mfarber@shearman.com
Attorneys for Defendants Mark P. Clein,
David M. Dill, Richard D. Gore, Christopher Grant, Jr.
and Edward K. Wissing

W. Travis Parham
Paul S. Davidson
Michael T. Harmon
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
tparham@wallerlaw.com
pdavidson@wallerlaw.com
mharmon@wallerlaw.com
Attorneys for Defendants Psychiatric Solutions, Inc.,
Joey A. Jacobs, Mark P. Clein, David M. Dill,
Richard D. Gore, Christopher Grant, Jr., William
M. Petri, Edward K. Wissing, Ronald M. Fincher,
Christopher L. Howard, Jack E. Polson, and Brent
Turner

Todd R. David
Jessica Corley
Lisa Bugni
Alston & Bird
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
todd.david@alston.com
jessica.corley@alston.com
lisa.bugni@alston.com
Attorneys for Defendants Psychiatric Solutions, Inc.,
Joey A. Jacobs, William M. Petrie, Ronald M. Fincher,
Christopher L. Howard, Jack E. Polson, and Brent Turner

       /s/ John S. Hicks